**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT GREENEVILLE**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>                    Plaintiff,<br>        v.<br><br>EMORY Q. JACKSON,<br>                    Defendant. | No. 2:20-cr-65<br><br>Judge Greer |

### UNITED STATES'S RESPONSE IN OPPOSITION TO DEFENDANT'S OBJECTIONS TO THE REPORT AND RECOMMENDATION (DOC. 43)

Magistrate Judge Wyrick has recommended denying Emory Jackson's motion to suppress physical evidence seized during the search of a truck in which Jackson was a passenger. (Doc. 34, Report & Recommendation at 5-10.) The magistrate judge concluded that (1) the stop of the truck was lawful because the officers had reasonable suspicion that one of the occupants—Jackson—was a person for whom there was an outstanding arrest warrant (*id*. at 5-8); (2) the stop of the truck was not unreasonably prolonged (*id*. at 8); (3) Jackson lacked standing to challenge the search of the truck and, in any event, the search was consensual because it was authorized by the driver and owner of the truck (*id*. at 8-9); and (4) the search of Jackson's backpack was consensual (*id*. at 9-10).

Jackson objects to only the first of those conclusions, contending that the stop of the truck violated the Fourth Amendment.[1] (Doc. 34, Jackson Objections.) He is mistaken. The stop of the truck was lawful because officers had reasonable suspicion that the passenger—Jackson—

---

[1] By not objecting to the magistrate judge's other conclusions, Jackson has waived his right to contest those conclusions. *E.g.*, *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987). In any event, for the reasons outlined in the report and recommendation (Doc. 34) as well as the United States's response to Jackson's motion to suppress (Doc. 27), the magistrate judge correctly concluded that the stop was not unreasonably prolonged and that the searches the officers conducted were consensual.

was both wanted on an outstanding arrest warrant for previously committed criminal activity and in the process of committing new criminal activity, namely possessing a firearm as a convicted felon. The Court should follow the magistrate judge's recommendation to deny Jackson's motion to suppress the physical evidence obtained during the stop.

### FACTS CONCERNING THE STOP

On the morning of August 7, 2020, Johnson City Police Officer Jeff Legault received a series of text messages from Melissa Gunter, a confidential informant, stating that she had seen Jackson carrying a firearm. (Doc. 39, Transcript at 6.) Gunter explained that she had just purchased some tires from Jackson and he was riding with her to have the tires installed at the Tire Barn on Bristol Highway. (*Id*. at 6-7.) Gunter stated that Jackson had the gun with him inside Gunter's truck and informed the officer of her location and the route that she would be taking to get to the Tire Barn. (*Id*. at 7.)

Officer Legault was familiar with Jackson from previous encounters and knew that Jackson was a convicted felon. (*Id*. at 6.) The officer was also aware that Jackson had outstanding warrants in Washington County for shoplifting and trespassing. (*Id*. at 7-8.) After confirming with dispatch that those warrants were still valid, Officer Legault went to look for Gunter's truck in the hope that he would be able to find Jackson. (*Id*.)

The officer found the truck traveling along the route Gunter had informed the officer she would be traveling. (*Id*. at 7.) He recognized the truck because it was "very distinguishable" with a big orange flame painted on the tailgate and several tires in the bed. (*Id*. at 8.)

When Officer Legault saw the truck, he observed Jackson sitting in the passenger seat. (*Id*. at 7.) After following the truck for a short distance, the officer initiated a traffic stop, and Gunter pulled into a business parking lot off of Princeton Road. (*Id*. at 9.)

2

## ARGUMENT

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. Stopping a vehicle and temporarily detaining its occupants constitutes a seizure under the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). Such seizures are reasonable, and thus permissible, however, when an "officer has reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity." *United States v. Place*, 462 U.S. 696, 702 (1983). In other words, vehicle stops are lawful when officers have reasonable suspicion "that criminal activity may be afoot," *Terry v. Ohio*, 392 U.S. 1, 30 (1968), or that a person in the vehicle "was involved in or is wanted in connection with a completed felony," *United States v. Hensley*, 469 U.S. 221, 229 (1985).

Reasonable suspicion is assessed in light of "the totality of the circumstances—the whole picture,"—which includes information known to the officers as well as inferences drawn from that information. *United States v. Cortez*, 449 U.S. 411, 417 (1981). Officers are permitted to make "commonsense judgments and inferences about human behavior," *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000), which can be "based on the commonly held knowledge they have acquired in their everyday lives." *Kansas v. Glover*, 140 S. Ct. 1183, 1190 (2020). Officers can also "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *Cortez*, 449 U.S. at 418).

In this case, the stop of the truck was lawful because Officer Legault had reasonable suspicion that Jackson was wanted on an outstanding arrest warrant and that he was also engaged in new and ongoing criminal activity—*i.e.*, possessing a firearm as a convicted felon.

3

As the magistrate judge correctly concluded, Officer Legault had reasonable suspicion that Jackson was wanted in connection with recently committed criminal activity at the time that he stopped the truck. Indeed, Officer Legault was personally aware that Jackson "had an outstanding arrest warrant in Washington County for shoplifting and trespassing." (Doc. 39, Transcript at 7.) And the officer "confirmed" the existence of that warrant with dispatch before attempting to locate Gunter's truck. (*Id.*) Once Officer Legault located the truck, he looked inside and saw Jackson sitting in the passenger seat. (*Id.* at 8.) The officer was able to "verify" that it was Jackson because he had "had several dealings with him." (*Id.*) In short, at the time he stopped the truck, Officer Legault knew that it contained a person for whom there was an active warrant. That was a sufficient basis to stop the truck. *E.g.*, *United States v. White*, 162 F. App'x 520, 523 (6th Cir. 2006); *accord United States v. Hudson*, 405 F.3d 425, 432 (6th Cir. 2005).

Contrary to Jackson's contention, his case is not materially distinguishable from *White*. While Officer Legault did not have an arrest warrant in his possession as the officers in *White* did, Officer Legault was aware of the warrant and had confirmed its existence with dispatch. (Doc. 39, Transcript at 7-8.) Reasonable suspicion does not demand absolute certainty. *Glover*, 140 S. Ct. at 1188. Instead, it "depends on the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Navarette v. California*, 572 U.S. 393, 402 (2014) (citation omitted). When dispatch confirms that there is an active arrest warrant for a person, it is reasonable for an officer to believe that the person is wanted in connection with criminal activity. Officer Legault had reasonable suspicion that Gunter's car contained a person for whom there was an active warrant at the time he stopped the vehicle, and the stop was justifiable on that basis alone.

The stop was also justifiable because, at the time Officer Legault initiated it, he had a reasonable basis to believe that Jackson was engaged in ongoing criminal activity. Officer Legault knew that Jackson was a previously convicted felon, and Gunter had informed the officer that Jackson "had a handgun with him" inside her vehicle. (Doc. 39, Transcript at 6.) Officer Legault confirmed several details that Gunter had relayed to him by locating her truck along the route she had indicated she was travelling and by observing tires inside the back of her truck as she had described. (*Id*. at 6-7.) When the officer located her truck, he also observed Jackson sitting in the passenger seat as Gunter had described. (*Id*. at 8.) Based upon that information, Gunter had reasonable suspicion that Jackson might be unlawfully possessing a firearm and appropriately stopped the vehicle to investigate.

## CONCLUSION

In sum, the stop of the truck in which Jackson was traveling was lawful. At the time he initiated that stop, Officer Legault had reasonable suspicion that Jackson was wanted for recently committed criminal activity and was in the process of committing a new criminal offense. Jackson's objections to the report and recommendation should be overruled, and his motion to suppress the physical evidence obtained during the search of the truck should be denied.

Respectfully submitted,

J. Douglas Overbey
United States Attorney

By:     *s/ Luke A. McLaurin*                 *s/ Kateri L. Dahl*        
        Luke A. McLaurin                     Kateri L. Dahl
        Assistant United States Attorney      Special Assistant United States Attorney
        NY Bar No. 4623849                  DC Bar No. 888241224
        800 Market Street, Suite 211          220 West Depot Street, Suite 423
        Knoxville, Tennessee 37902           Greeneville, Tennessee 37743
        Luke.McLaurin@usdoj.gov             Kat.Dahl@usdoj.gov
        (865) 545-4167                       (423) 639-6759