UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:20-CR-65 |
| | ) | |
| EMORY JACKSON | ) | |

MEMORANDUM OPINION AND ORDER

Before the Court is the report and recommendation of United States Magistrate Judge Cynthia R. Wyrick filed on October 30, 2020, recommending that this Court deny in part and grant in part Defendant Emory Jackson's motion to suppress. [Doc. 34]. On November 24, 2020, Defendant and the government filed objections to the report and recommendation. [Docs. 41, 43]. The opposing party responded. [Docs. 54, 56]. The matters are now ripe for review. For the following reasons, the Court REJECTS in PART and ADOPTS in PART the Magistrate Judge's Report and Recommendation, [Doc. 34], and DENIES Defendant's motion to suppress, [Doc. 21].

I. BACKGROUND

On September 1, 2020, Defendant was indicted in a single-count indictment by a federal grand jury charging him with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) arising from an August 7, 2020 traffic stop. [Doc. 14]. Defendant subsequently filed a motion to suppress. [Doc. 21]. The Magistrate Judge held a suppression hearing on October 13, 2020. [Docs. 30, 39]. Thereafter, the Magistrate Judge filed her report, recommending Defendant's motion to suppress be denied in part and granted in part. [Doc. 34]. The parties then filed timely objections to the Magistrate Judge's report and recommendation. [Docs. 41, 43].

Neither the government nor the Defendant objected to the basic facts outlined in the Magistrate Judge's report and recommendation, but they did object to the findings and legal conclusions related to those facts. After reviewing the record before the Court and finding the facts to be consistent with the Magistrate Judge's report and recommendation, the Court **ADOPTS BY REFERENCE** the facts as set out in the

1

report and recommendation. [Doc. 34 at 1]. *See United States v. Winters*, 782 F.3d 289, 295 n.1 (6th Cir. 2013). The Court will refer to the facts only as necessary to analyze the issues raised on the objections.

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Criminal Procedure 59, "[a] district judge may refer to a magistrate judge for recommendation a defendant's . . . motion to suppress evidence." Fed. R. Crim. P. 59(b)(1). Within fourteen days after being served with a copy of the report and recommendation on a motion to suppress, "a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Crim. P. 59(b)(2). "A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b); *see also* Fed. R. Crim. P. 59(b)(3).

This Court must conduct a de novo review of those portions of the report and recommendation to which objection is made and may accept, reject or modify, in whole or in part, the Magistrate Judge's findings or recommendations. 28 U.S.C. § 636(b)(1)(C); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). "The district court is not required to review - under a *de novo* or any other standard – 'any issue that is not the subject of an objection.'" *Brown v. Bd. Of Educ.*, 47 F. Supp. 665, 674 (W.D. Tenn. 2014) (emphasis added) (quoting *Thomas v. Arn*, 474 U.S. 140, 149 (1985)). After reviewing the evidence, this Court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations" of the magistrate judge. 28 U.S.C. § 636(b)(1).

## III. DISCUSSION

Defendant claims the Magistrate Judge erred by not finding that the traffic stop constituted a Fourth Amendment violation. [Doc. 43]. The government objects to the Magistrate Judge's conclusion that Defendant's un-*Miranda*zed statements were made during a custodial interrogation and were the fruit of the poisonous tree and, therefore, warranted suppression. [Doc. 41]. The Court will analyze each objection in turn.

### A. Defendant's Objection

Defendant's argument that the officer had no basis to conduct a traffic stop is not supported by the record. A traffic stop is considered a seizure for Fourth Amendment purposes. *Whren v. United States*, 517 U.S. 806, 809-10 (1996). In order to effectuate a traffic stop, an officer must possess either probable cause of a civil traffic infraction or reasonable suspicion of an ongoing crime. *United States v. Lyons*, 687 F.3d 754, 763 (6th Cir. 2012), *reh'g and reh'g en banc denied*, (2012); *see also United States v. Dean*, 657 F. App'x. 503, 506 (6th Cir. 2016) (citing *United States v. Blair*, 524 F.3d 740, 748 (2008)); *United States v. Collazo*, 818 F.3d 247, 253 (2016). The level of suspicion that justifies an investigative stop, reasonable suspicion, "is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *Prado Navarette v. California*, 572 U.S. 393, 397 (2014). The reasonable suspicion standard does not require perfection or even require that the officer be correct. *Kansas v. Glover*, 140 S. Ct. 1183, 1188 (2020) (quoting *United States v. Arvizu*, 534 U.S. 266, 274 (2002); *Heien v. North Carolina*, 574 U.S. 54, 60 (2014)). It is well-settled that a passenger in a vehicle may challenge the constitutionality of a stop and the scope of an ensuing detention. *See Brendlin v. California*, 551 U.S. 249, 256-59 (2007).

Defendant argues that "[a]t no time relevant hereto were there any specific, articulable, and objective facts to indicate that a criminal offense had been or was about to be committed in this cause." [Doc. 43 at 3]. The Court disagrees. At the time of the traffic stop, there was an active warrant for Defendant's arrest. This evidence corroborates the testimony of Officer Legault. Further, the confidential informant's text message exchange with Officer Legault linked Defendant to the vehicle that was targeted. Once Officer Legault saw the vehicle driving on the road, he was able to observe and discern Defendant in the passenger seat. From prior dealings with Defendant, Officer Legault had familiarity with Defendant and could recognize him. Officer Legault confirmed the presence of an open warrant for Defendant's arrest with dispatch immediately before pulling over the confidential informant's vehicle and effectuating the traffic stop. *See United States v. Hudson*, 405 F.3d 425, 434 (6th Cir. 2005). Moreover, from the confidential informant's text messages earlier that day, Officer Legault suspected Defendant might have a firearm in the vehicle, and his belief was indeed true. Officer Legault had reasonable suspicion that Defendant, a

3

convicted felon, was in possession of a firearm, and, thereby, was committing the crime of felon in possession. *United States v. Gaston*, 776 F.3d 405, 408 (6th Cir. 2015) ("Specifically, a tip from an identifiable informant who gives reasonably detailed information can provide reasonable suspicion, especially if an investigating officer's own observations contribute to his suspicions." (citing *Smoak v. Hall*, 460 F.3d 768, 779-80 (6th Cir. 2006))). Officer Legault had reasonable suspicion that a crime was committed at the time he effectuated the traffic stop; the traffic stop was constitutionally permissible.

Defendant next takes issue with the Magistrate Judge's finding that Defendant does not have standing to challenge the warrantless search. [Doc. 43 at 3-4]. The Court is unpersuaded. Defendant was seated in the front passenger seat when the traffic stop was initiated. There is no evidence that Defendant had a possessory interest in the vehicle, and therefore, he lacked a legitimate expectation of privacy in it to raise a valid objection to the search or the seizure of the firearm. Moreover, there is sufficient evidence that the driver gave voluntary consent to search her vehicle.

In *Rakas v. Illinois*, the Supreme Court held that the defendants did not have a legitimate expectation of privacy in the glove compartment or area under the seat in a car in which they were "merely passengers." 439 U.S. 128, 148-49 (1978). "Like the trunk of an automobile, these are areas in which a passenger *qua* passenger simply would not normally have a legitimate expectation of privacy." *Id.* Thus, a "passenger usually lacks a privacy interest in a vehicle that the passenger neither owns nor rents, regardless of whether the driver owns it or rents it." *United States v. Cooper*, 133 F.3d 1394, 1398 (11th Cir. 1998).

In this case, Defendant does not allege any privacy or possessory interest in the vehicle. *See United States v. Abrams*, 494 F. Supp. 2d 657, 661 n.6 (S.D. Ohio 2005) ("It is axiomatic that a defendant has the burden of showing that [he] had a reasonable expectation of privacy in the area searched.") (citing *Rakas*, 439 U.S. at 130 n.1). As such, Defendant has not met his burden to show that he had a reasonable expectation of privacy that was violated by the search of the car and the seizure of the firearm from the center console between the driver and passenger seat. *Rawlings v. Kentucky*, 448 U.S. 98 (1980). *See also United States v. Matlock*, 415 U.S. 164, 171 (1974) (holding that consent may be given either by the suspect

or by some other person who has common authority over, or sufficient relationship to, the item to be searched).

Under *Matlock*, the driver of a vehicle generally has apparent authority to consent to a search of the vehicle. *United States v. Morales*, 861 F.2d 396, 399-400 (3d Cir.1988); *United States v. Varona-Algos*, 819 F.2d 81, 83 (5th Cir.), *cert. denied*, 484 U.S. 929 (1987). The driver has immediate possession and control over the vehicle and ordinarily has access to all internal and external compartments, such as a center console. Taken together, the facts indicate the driver, the confidential informant, possessed apparent authority over the vehicle and gave her authority to consent to Officer Legault's vehicle search.

If a police officer receives consent for the search, "a warrantless search does not offend the Constitution." *United States v. Moon*, 513 F.3d 527, 537 (6th Cir. 2008). Consent "must be voluntary and freely given[;]" this means consent is "unequivocal, specific and intelligently given, uncontaminated by any duress or coercion." *Id.* (citing *United States v. McCaleb*, 552 F.2d 717, 721 (6th Cir. 1977)). Consent to search "is a question of fact to be determined from the totality of all the circumstances." *Id.* (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973)). In this case, the confidential informant, the driver of the vehicle, gave Officer Legault verbal consent to search the vehicle during the traffic stop. Further, she took her dog out of the backseat to let the officers search that area, stepped out of the way, and sat on the sidewalk during the search. *See United States v. Carter*, 378 F.3d 584, 589 (6th Cir. 2004) (verbal consent is not required, nor is there any formula of "magic words" one must utter to establish actual voluntary consent, actions indicating acquiescence to the request to search are sufficient). Accordingly, the search of the vehicle and the seizure of the firearm located in the center console was constitutional, and Defendant's objection to the Magistrate Judge's order are OVERRULED.

### B. Government's Objection

The government objects to the Magistrate Judge's recommendation to suppress Defendant's statements to law enforcement officers. Specifically, the government objects to the Magistrate Judge's conclusion of law that Defendant was in *Miranda* custody during the traffic stop. [Doc. 41].

The Fifth Amendment provides that an individual may not be "compelled in any criminal case to be a witness against himself[.]" U.S. Const. amend. V. In order to safeguard that right, law-enforcement officers must inform a suspect of his rights under the Fifth Amendment—including his right to remain silent in response to the officers' questions, and his right to the presence of an attorney—before conducting a custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). A suspect is in custody if he is subjected to "the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Howes v. Fields*, 565 U.S. 499, 509 (2012).

In the instant case, the Defendant did not have unrestrained freedom to move about, nor was he free to leave, as he was subject to a traffic stop. While acknowledging that a traffic stop curtails the driver's and passenger's freedom of movement, the Supreme Court has held that an individual briefly detained for a routine traffic stop "is not 'in custody' for the purposes of *Miranda*." *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984). The Supreme Court has further held that "the temporary and relatively nonthreatening detention involved in a traffic stop or *Terry* stop does not constitute *Miranda* custody." *United States v. Cantie*, ___ F. App'x ___, 2021 WL 79805, at *4 (6th Cir. Jan. 11, 2021) (quoting *Maryland v. Shatzer*, 559 U.S. 98, 113 (2010)). However, an investigatory detention can evolve into a custodial interrogation. *United States v. Knox*, 839 F.2d 285, 299 (6th Cir. 1988) (Jones, J., concurring).

"In determining whether a person is 'in custody' for purposes of *Miranda*, courts look to the objective circumstances of the interrogation to determine how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her freedom of action." *United States v. Abdi*, 827 F. App'x 499, 506 (6th Cir. 2020) (quoting *United States v. Luck*, 852 F.3d 615, 621 (6th Cir. 2017)). *See United States v. Panak*, 552 F.3d 462, 465 (6th Cir. 2009). "Several factors guide the inquiry: the location of the interview; the length and manner of questioning; whether the individual possessed unrestrained freedom of movement during the interview; and whether the individual was told []he need not answer the questions." *Panak*, 552 F.3d at 465 (citing *United States v. Swanson*, 341 F.3d 524, 529 (6th Cir. 2003)).

The questioning began while Defendant was seated in the passenger seat of the vehicle and continued in the parking lot when Defendant was asked to step out of the vehicle. *See Maryland v. Wilson*, 519 U.S.

408, 415 (1997) (establishing that during a traffic stop, police officers may ask passengers out of the vehicle pending the completion of the stop). *See also Pennsylvania v. Mimms*, 4334 U.S. 106, 111 (1977) (holding that a police officer may properly ask a driver to get out of his or her vehicle during a traffic stop). Defendant remained outside the passenger side of the vehicle the entire time of the questioning. He was neither placed in the back of the patrol car during the questioning nor was he transported to an unfamiliar location to be questioned. *See United States v. Richardson*, 949 F.2d 851, 857-58 (6th Cir. 1991) (holding that detention in a police car does not automatically constitute an arrest but may do so when the detention exceeds the purpose and objective of the stop.); *California v. Beheler*, 463 U.S. 1121, 1125-26 (1983) (finding the detainee was not "in custody" although questioning took place in a police station). Instead, Defendant remained at the location of the traffic stop, in a public parking lot, during the entirety of the questioning. "The place of the questioning in the present case is substantially less hostile or coercive than in other cases in which this court or the Supreme Court has held that a detainee was not entitled to a *Miranda* warning." *Swanson*, 341 F.3d at 529 (collecting cases in which individuals were questioned at police stations and found not to be in custody for purposes of *Miranda*).

The questioning of Defendant was extremely limited in that it involved typical investigatory questioning. During a *Terry* stop, the "officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions" without converting the stop into a custodial interrogation. *Berkemer*, 468 U.S. at 439. Here, the officer asked the Defendant in a conversational tone whether he had anything illegal on him, whether he was aware of the firearm in the center console of the vehicle, if it belonged to him, and whether Defendant had any open warrants for his arrest. Officer Legault only asked Defendant four questions over the course of a five-minute time period. Moreover, the circumstances of the interrogation did not grow increasingly intimidating as the questioning continued, but the cordial tone remained the same throughout. The questioning lasted approximately five minutes was only as long as the time it took to periodically inquire about the firearm and to ask about active arrest warrants while the officer searched the vehicle and completed the traffic stop. The questioning was not a hostile or prolonged interrogation.

7

Defendant did not possess unrestrained freedom of movement during the questioning, because he was subject to a *Terry* stop. While he was not free to leave because of the ongoing traffic stop, Defendant was not handcuffed or in any other way physically restrained during the questioning. *Abdi*, 827 F. App'x at 506 ("Not all restraints on freedom of movement amount to custody for purposes of *Miranda*." (quoting *Howes*, 565 U.S. at 509). Only two officers were present during the questioning, the body camera footage shows that the second officer stood a few feet away from the Defendant at the end of the vehicle. *See Berkemer*, 468 U.S. at 438 ("The fact that the detained motorist typically is confronted by only one or at most two policemen further mutes his sense of vulnerability."). *See also Swanson*, 341 F.3d at 531 ("[A] routine traffic stop does not usually involve three police cars."). The officers present did not display, draw, or point their weapons at Defendant during the questioning or at any time during the traffic stop. *See Berkemer*, 468 U.S. at 438 ("[C]ircumstances associated with the typical traffic stop are not such that the motorist feels completely at the mercy of the police."). Defendant's inability to move does not change the proper *Terry* stop into a custodial interrogation. Further, it does not implicate Defendant's *Miranda* rights given the briefness and immediacy of the question and the lack of a "police dominated" atmosphere during the questioning. The inherently coercive pressures of station house questioning found in *Miranda* are not present in this case. *See Howes*, 565 U.S. at 509.

Defendant was not explicitly told that he did not have to answer the questions posed to him This is the only factor that weighs in favor of finding that Defendant was in custody. Nonetheless, a failure to do so does not automatically render the encounter custodial. *See, e.g., Panak*, 552 F.3d at 467 (finding that, although officers never told suspect that she did not need to answer their questions and could end the interview at will, the existence of such advice is one factor among many and is not a necessary condition); *see also United States v. White*, 270 F.3d 356, 366 (6th Cir. 2001) (finding no custodial interrogation where agents made no suggestion that individual was not free to leave). When considering the totality of the circumstances, the Court finds that the failure to tell Defendant he did not need to answer any questions is not outcome determinative in this case. *See United States v. Conder*, 529 F. App'x 618,

8

623 (6th Cir. 2013) (noting that the Sixth Circuit has never required agents to inform a suspect that he can refuse to answer questions or terminate the interrogation at will).

Even though it was Officer Legault's intention to arrest Defendant on the active warrant, Officer Legault made no mention of arrest or knowledge of the warrant until he questioned Defendant about it specifically. A reasonable person would not have known it was Office Legault's purpose for effectuating the stop. *See Stansbury v. California*, 511 U.S. 318, 323 (1994) (holding that the court looks to "the objective circumstances of the interrogation, not on the subjective views" of the questioning officers or the defendant); *Berkemer*, 468 U.S. at 442 ("A policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation."); *United States v. Salvo*, 133 F.3d 943, 952 (6th Cir. 1998) ("[A] custody determination does not depend on the subjective knowledge of the interrogating officers.") "By limiting the analysis to objective circumstances, the test avoids burdening police with the task of anticipating each defendant's idiosyncrasies and divining how those particular traits affect that suspect's state of mind." *Berkemer*,468 U.S. at 430-31.

The Magistrate Judge in her order relies on *United States v. Asberry*, No. 5:06 CR 330, 2007 WL 781475 (N.D. Ohio Mar. 12, 2007), to find that Officer Legault's questioning about the gun was designed and known to elicit an incriminating response. [*See* Doc. 34 at 11-13]. In *Asberry*, the court held that the defendant was in custody "as soon as [he] was asked to exit his vehicle and place his hands on the vehicle, [and] he was no longer free to leave" *Id.* at *14. The *Asberry* Court's finding is not supported by any authoritative case law and appears to be contrary to law. Instead, it is well established that during a traffic stop law enforcement officers may request passengers to step out of the vehicle pending the completion of the stop and that does not place the passenger in *Miranda* custody. *Wilson*, 519 U.S. at 414-15; *United States v. Pacheco*, 841 F.3d 384, 390 (6th Cir. 2016); *United States v. White*, No. 1:20-cr-00590-JG, 2020 WL 7138655, at *2 ( N.D. Ohio Dec. 7, 2020). Further, the Supreme Court has held that officers do not need independent justification to remove the passenger from the vehicle. *Wilson*, 519 U.S. at 413.

9

Moreover, this Court does not find the thirteen-year-old unpublished outlier district court opinion very persuasive especially in light of well-established and more recent case law.

The facts in the instant case are similar to those in *Cantie*, where the Sixth Circuit Court of Appeals declined to suppress Cantie's un-*Mirandized* statements made while Cantie was a passenger during a traffic stop. *Cantie*, 2021 WL 79805, at *10. There, the police officer initiated contact with Cantie, performed a consensual pat-down search, and then inquired about a firearm seized from a search of the vehicle subject to the traffic stop. *Id.* at *9-10. The questioning was brief, and the officer did not tell Cantie that he was not free to leave or respond to the questions. *Id.* Although Cantie was eventually arrested and placed in custody for *Miranda* purposes, the Sixth Circuit held the Cantie was not in custody when asked about the firearm. *Id.* at *10. Likewise, in this present case, the Officer initiated contact with Defendant during the traffic stop and inquired about the firearm discovered during a consent search of the vehicle and if Defendant had any active warrants for his arrest. Officer Legault's questioning was limited to four questions, did not last very long and was neither intrusive, hostile nor coercive.

While there were coercive aspects to the situation, *e.g.*, not informing Defendant that he did not need to answer any questions, a non-custodial situation is not converted into one in which *Miranda* applies simply because the questioning took place in a "coercive environment." *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (*per curiam*); *see also Salvo*, 133 F.3d at 948 ("The Supreme Court has distinguished between 'custodial interrogation' and the mere questioning of a suspect in a 'coercive environment'"]). This is because

> [a]ny interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime . . . . *Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him "in custody." It was that sort of coercive environment to which *Miranda* by its terms was made applicable, and to which it is limited.

*Mathiason*, 429 U.S. at 495. While the questioning may have created a slightly coercive environment, under the totality of the circumstances, it did not turn the parking lot into an "interrogation cell" and render

10

him in custody for *Miranda* purposes. *See Panak*, 552 F.3d at 466 (citing *United States v. Craighead*, 539 F.3d 1073, 1083 (9th Cir. 2008)).

A review of the facts and case law determines that Defendant was not in *Miranda* custody during Officer Legault's questioning throughout the traffic stop. The government's objection is SUSTAINED. Defendant's motion to suppress is DENIED in its entirety because the Defendant was not in custody at the time Defendant made the statements at issue.

## IV. CONCLUSION

For the reasons stated above in the memorandum opinion, the Court **ACCEPTS AND ADOPTS IN PART and REJECTS IN PART** the report and recommendation, [Doc. 34], of the magistrate judge.

It is further ordered that:

(1) the Defendant's objection to the Magistrate Judge's Report and Recommendation, [Doc. 43], is **OVERRULED**;

(2) the Government's objection to the Magistrate Judge's Report and Recommendation, [Doc. 41 ], is **SUSTAINED**; and

(3) the Defendant's motion to suppress evidence [Doc. 21], is **DENIED**.

So ordered.

ENTER:

                                                  s/J. RONNIE GREER
                                         UNITED STATES DISTRICT JUDGE